86 F.3d 1163
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tomas SOZA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70915.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 15, 1996.*
Decided May 23, 1996.
 
 Before: ALARCON, BEEZER, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tomas Soza, a native and citizen of Nicaragua, petitions for review of the decision of the Board of Immigration Appeals (BIA), affirming the decision of the Immigration Judge (IJ) and denying his application for asylum and suspension of deportation, pursuant to 8 U.S.C. §§ 1158(a), 1254(a)(1).[1] We deny the petition for review.
 
 
 3
 * Soza contends that the BIA erred in denying him asylum under 8 U.S.C. § 1158(a). We disagree.
 
 
 4
 Under § 1158(a), Soza "may be granted asylum in the discretion of the Attorney General" if he is found to be a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). That section, in turn, requires that Soza demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).
 
 
 5
 An alien must demonstrate both that he has a subjective genuine fear of persecution and that this fear is objectively reasonable. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995) (citing Estrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991)). "The objective inquiry requires a showing by credible, direct, and specific evidence of facts." Id. (internal citation and quotations omitted). We reverse the BIA's decision "only if the evidence presented to the Board was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992) (citing INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)).
 
 
 6
 Soza argues that he has a well-founded fear of persecution based upon the subpoena his mother received. The IJ, however, did not credit either the authenticity of the subpoena or Soza's interpretation of its import. "This court reviews credibility findings for substantial evidence," Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987) (citations omitted), keeping in mind that "[t]he Immigration Judge is in the best position to make credibility findings because he views the witness as the testimony is given," Canjura-Flores v. INS, 784 F.2d 885, 888 (9th Cir.1985). Where the IJ doubts the credibility of a witness, he should provide "a specific, cogent reason for [his] disbelief." Turcios, 821 F.2d at 1399 (citations and internal quotations omitted). Here, the IJ discussed at length his reasons for disbelieving Soza, and substantial evidence supports the IJ's conclusion that the subpoena, if authentic, merely refers to Soza's status as a deserter. As conscription does not amount to persecution, Kaveh-Haghigy v. INS, 783 F.2d 1321, 1323 (9th Cir.1986), the subpoena does not support Soza's claim.
 
 
 7
 In any event, to the extent that Soza did have a well-founded fear of persecution when he left Nicaragua, he has failed to demonstrate that this fear remains objectively reasonable in light of the change in government there. At the hearing, Soza conceded that the situation in Nicaragua has improved since Chamorro's election. He also stated that while his mother had been afraid to send him the subpoena when the Sandinista government was in place, she was no longer afraid to do so once the Chamorro government took over.
 
 
 8
 We do not discount the significance of the fact that the Sandinistas assassinated Soza's foster brother in 1979 and severely injured Soza's father in 1983. We must note, however, that since that time, Soza's family has continued to operate a ranch without apparent harm or threat of harm. Because a reasonable factfinder could find no requisite fear of persecution, we conclude that the BIA did not err.
 
 II
 
 9
 Soza also contends that the BIA erred in denying him suspension of deportation under 8 U.S.C. § 1254(a)(1). We disagree.
 
 
 10
 The attorney general may, in her discretion, suspend deportation provided that Soza:
 
 
 11
 (1) has been physically present in the United States for not less than seven years; (2) is a person of "good moral character"; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."
 
 
 12
 Ramirez-Durazo v. INS, 794 F.2d 491, 497 (9th Cir.1986) (quoting 8 U.S.C. § 1254(a)(1)). Here, the only issue is whether Soza's deportation would result in extreme hardship. We must uphold the BIA's decision "as long as it considers all factors relevant to the hardship determination and states its reasons for denying the requested relief." Id. at 498 (citing Zavala-Bonilla v. INS, 730 F.2d 562, 567 (9th Cir.1984).[2]
 
 
 13
 Soza contends that the IJ failed to give adequate consideration to four factors: (1) his family ties in the United States; (2) the extent to which deportation would damage his mental health due to his acculturation to the United States; (3) the economic hardship he would face upon return to Nicaragua; and (4) the political conditions there.[3] In fact, the IJ gave due consideration to each of these factors.
 
 
 14
 The IJ correctly noted that most of Soza's family resides in Nicaragua. See Villena v. INS, 622 F.2d 1352, 1357 (9th Cir.1980) (en banc) (concluding that where most of the immigrant's family resided in the country to which he was going to be deported, "deportation would have reunited him with his family, rather than separating him from it"). The IJ also properly noted that the psychological difficulty of readjusting to life in Nicaragua does not support a finding of extreme hardship because it is "the type of hardship experienced by most aliens who have spent time abroad." Ramirez-Durazo, 794 F.2d at 498 (internal quotations and citation omitted). In any event, Soza testified that "I don't have a really big psychologic[al] problem if I go back to Nicaragua...."
 
 
 15
 Soza argues that he will face extreme economic hardship but, as the IJ properly found, Soza will be able to work at the family ranch. While a complete inability to obtain employment may support a finding of extreme hardship, see, e.g., Santana-Figueroa v. INS, 644 F.2d 1354, 1356 (9th Cir.1981), "the reduced job opportunities and lower standard of living that [Soza] will face upon deportation to [Nicaragua] do not rise to the level of 'extreme hardship,' " Ramirez-Durazo, 794 F.2d at 498. Finally, the IJ properly concluded that, given the change in Nicaragua's government, Soza did not face extreme hardship based on the political climate there.
 
 
 16
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Soza does not appeal the BIA's denial of withholding of deportation under 8 U.S.C. § 1253(h)
 
 
 [2]
 Where, as here, the BIA conducts an independent review of the record and then adopts the IJ's reasons, "we treat the IJ's statement of reasons as the BIA's and review the IJ's decision for abuse of discretion." Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995)
 
 
 [3]
 We decline to address Soza's additional contentions--that he has been leading a productive life in the United States, that he would not be able to obtain an immigrant visa, and that he lacks a "significant immigration history"--because they were not presented to either the IJ or the BIA