a subsequent bona fide purchaser for value. *Id.* § 507.34.

Chapter 507 includes approved standard forms for conveyancing which embody various provisions necessary to entitle the documents to be received for recordation. Among these standard forms is number 58–M, Assignment of Contract for Deed— By Individual Seller, Purchaser or Assignee, which is the form used by the Shusters to convey their interest in the contract for deed to the Doanes. Chapter 507 read as a whole reveals a legislative intent to centralize the recording of all interests in real estate in the county recorder's office of the county where the land is located. In particular, we consider the broad language of section 507.01 and the inclusion of form 58–M in the chapter on conveyancing and recording of interests in real estate indications of legislative intent to include assignments of a vendor's interest in a contract for deed in the real estate recording system. The interests of the Doanes and the PCA were therefore perfected. Accordingly, the judgment of the district court is reversed.

Hernan CANJURA–FLORES, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 83–7890.

United States Court of Appeals,
Ninth Circuit.

Argued March 7, 1985.

Submitted Aug. 2, 1985.

Decided Sept. 24, 1985.

Designated for Publication
March 11, 1986.

(Bankr.D.Kan.1982).

Paula D. Pearlman, El Centro, Cal., for petitioner.

Lauri Steven Filppu, Joseph F. Ciolino, Rose Collantes (argued), Dept. of Justice, Civ.Div., Washington, D.C., for respondent.

Before FLETCHER, PREGERSON, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Hernan Canjura-Flores (Canjura-Flores), a native of El Salvador, petitions for review of his application for withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) (§ 243(h)), and his application for asylum under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (§ 208(a)). The Board of Immigration Appeals (The Board) determined that Canjura-Flores had "not shown that he will be persecuted or that he has a well-founded fear of persecution," and denied Canjura-Flores's petition for withholding of deportation and asylum. We reverse the denial of the petition for withholding, and reverse the denial of the petition for asylum and remand to the Attorney General.

## BACKGROUND

Canjura-Flores is a twenty-three-year-old native of El Salvador who entered this country by crossing the Mexican border without inspection in December 1979. Deportation proceedings were instituted against him in March 1983. Canjura-Flores admitted deportability and applied for withholding of deportation and asylum.

In support of his application for withholding and asylum Canjura-Flores filed a form I-589. The form indicates Canjura-Flores's fear that the government was looking for him because of his membership in a leftist organization known as the Popular League of February 28 (Popular League). The form also indicates that Canjura-Flores: (1) participated in meetings and painted slogans on behalf of the organization; (2) believes that the government is looking for him and intends to jail or kill him because of his membership in the organization; (3) has information that the National Guard came to his home looking for him in 1980; and (4) has an uncle who was killed by the government. Canjura-Flores attached a report prepared by Amnesty International on the general conditions in El Salvador to his form.

Canjura-Flores also testified on his own behalf before the Immigration Judge. He testified that he left El Salvador because of his fear that the National Guard was after him, and that he believed the National Guard had been given the names of the members of the Popular League. He also stated that he had received a letter from his grandparents after arriving in the United States which indicated that the National Guard had come to his home and asked for him by his nickname, "Pintura." He testified that his activities with the Popular League included public meetings, distribution of propaganda, painting slogans on walls, and protest marches.

During cross-examination Canjura-Flores admitted that he had been convicted of stealing a car since being in the United States, had previously been given voluntary departure to Nicaragua, and had given a false name when arrested for stealing the car and at the deportation hearing which resulted in his being given voluntary departure to Nicaragua. He also admitted that

he was not sure that there was a written list of the members of the Popular League.

The Immigration Judge found that Canjura-Flores's fear of persecution was "speculative" and denied the petition for withholding and asylum. The Board affirmed. The Board relied on the Immigration Judge's finding that it was unlikely that the National Guard would seek out such a young person, the inconsistent testimony regarding whether there was a written list of members of the Popular League, its own conclusion that most of Canjura-Flores's activities on behalf of the organization were covert, and the lack of corroborating evidence that the National Guard was searching for Canjura-Flores.

### DISCUSSION

#### I. Withholding of Deportation.

In order to qualify for withholding of deportation an alien must establish a "clear probability" that he will be subject to persecution by the government, or a group that the government cannot control, on account of "race, religion, nationality, membership in a particular social group, or political opinion." § 243(h); *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 2491, 81 L.Ed.2d 321 (1984); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1281 (9th Cir.1984). Clear probability means "more likely than not." *Stevic*, 104 S.Ct. at 2498; *Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1392 (9th Cir.1985). The alien must also establish that he is not a security risk to the United States. § 243(h); *Bolanos-Hernandez*, 767 F.2d at 1284. If the alien meets this burden the Attorney General is prohibited from deporting the alien. *Stevic*, 104 S.Ct. at 2496 n. 15; *Chavez v. INS*, 723 F.2d 1431, 1432 (9th Cir.1984).

■ To establish that persecution is more likely than not the alien must provide some concrete evidence of the probability of persecution. *Sarvia-Ouintanilla*, 767 F.2d at 1392; *Shoaee v. INS*, 704 F.2d 1079, 1084 (9th Cir.1983). General evidence of violent conditions in the alien's home country is not sufficient in itself to estab-lish a clear probability of persecution. *Bolanos-Hernandez*, 767 F.2d at 1284; *Zepeda-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984). The alien is not, however, required to provide independent corroborative evidence of the threats of persecution. *Bolanos-Hernandez*, 767 F.2d at 1285. If credible and supported by general documentary evidence that the threats should be considered serious, an alien's own testimony regarding specific threats can establish a clear probability of persecution. *Compare Sarvia-Quintanilla*, 767 F.2d at 1392 (comparing *Bolanos-Hernandez*, 767 F.2d at 1285, 1288 (alien's testimony sufficient to establish clear probability of persecution where testimony is "credible and unrefuted") with *Saballo-Cortez v. INS*, 761 F.2d 1259, 1264–66 & nn. 3–4 (9th Cir.1984) (alien's testimony insufficient to establish a clear probability of persecution where it is not believed by the Board or the Immigration Judge)).

■ The Board found that Canjura-Flores failed to establish a "clear probability" of persecution. We recently summarized the Board's role in reviewing petitions for withholding of deportation or asylum as follows:

> [T]he Board has the power to review the record *de novo* and make its own findings of fact. *See Noverola-Bolaina v. INS*, 395 F.2d 131 (9th Cir.1968). The Board also has the right to disagree with the immigration judge's credibility findings. *See McMullen*, [*v. I.N.S.*] 658 F.2d [1312] at 1318 [ (9th Cir.1981) ]. Similarly, the Board may determine that the evidence is legally insufficient, despite an immigration judge's contrary determination.

*Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1455 (9th Cir.1985). The Immigration Judge is in the best position to make credibility findings because he views the witness as the testimony is given. The Immigration & Naturalization Service concedes that neither the Immigration Judge nor the Board found that Canjura-Flores's testimony was not credible. Without such a finding, we accept Canjura-Flores's testimony

as credible. Any other rule would put us in the position of second-guessing the credibility of the petitioner on appeal when no doubts have been raised by the Immigration Judge or the Board.

■ Our decision is not a presumption in favor of testimony given by aliens petitioning for withholding or asylum. The question of credibility remains with the Immigration Judge in the first instance, and with the Board as outlined in our previous decisions. We will continue to remand to the Board for credibility findings when we reverse a decision in which the Board has avoided the credibility issue by holding that a petitioner has failed to establish either a well-founded fear of persecution or a clear probability of persecution even if his testimony is assumed to be credible, *see Garcia-Ramos v. INS*, 775 F.2d 1370, 1374–75 (9th Cir.1985); *Argueta v. INS*, 759 F.2d 1395, 1397–98 (9th Cir.1985),[1] or when the basis of the Board's decision cannot be discerned from the record, *see Cardoza-Fonseca v. INS*, 767 F.2d at 1455. When the decisions of the Immigration Judge and the Board are silent on the question of credibility, however, we will presume that they found the petitioner credible.

■ Therefore, we presume that Canjura-Flores's testimony is credible and find that, he has shown a clear probability of persecution. The I–589 form and Canjura-Flores's testimony establish that he was specifically sought out by the National Guard at his home. According to Canjura-Flores's testimony, the National Guard sought out all of the members of the Popular League because of their opposition to the government, and Canjura-Flores was known to be a member of the Popular League.

The Board's reliance on the inconsistency in Canjura-Flores's testimony regarding a

written list is misplaced. Canjura-Flores never retracted his assertion that the National Guard was given the names of the members of the Popular League, and he testified that the National Guard sought him out by his nickname at his home. Whether the National Guard was given a written list or simply informed of the names of the members of the Popular League does not affect our conclusion that the Board's finding that Canjura-Flores has not established a clear probability of persecution is erroneous.

The Board's findings that it was unlikely that the government would seek out Canjura-Flores because of his youth and that most of his activities on behalf of the Popular League were covert conflict with the evidence. Canjura-Flores testified that young people were likely to be sought out in his hometown, and this testimony is supported by the Amnesty International report he attached to his form I–589. Canjura-Flores's testimony that he participated in public meetings and protest marches, and distributed propaganda was uncontroverted.

■ The Board's reliance on the lack of corroborating evidence in this case is inconsistent with our prior decisions. The existence or non-existence of corroborating evidence is a factor which can be considered. *See Saballo-Cortez*, 761 F.2d at 1265 n. 4. However, when the alien provides credible testimony regarding persecution there is no absolute requirement that the alien provide corroboration. *Bolanos-Hernandez*, 749 F.2d at 1323–24. Accordingly, we reverse the denial of relief under the petition for withholding of deportation.

II. Asylum.

■ Because we conclude that Canjura-Flores has established a clear probability of

1. Although we will continue to follow the practice of remanding to the Board for credibility findings when we disagree with Board decisions holding that the petitioner has not met his burden of proof even if credibility is assumed, we discourage the Board from taking this approach. If the immigration judge or the Board finds that an alien's testimony lacks credibility and that the testimony would not support a claim for asylum or withholding even if it were credible then these conclusions should be stated in the alternative. If immigration judges and the Board evaluate credibility in each case, remand will not be necessary and further delays in the processing of asylum claims can be avoided.

persecution, we necessarily conclude that Canjura-Flores has met the less stringent well-founded fear of persecution standard necessary to support a petition for asylum. *Stevic,* 104 S.Ct. at 2498; *Bolanos-Hernandez,* 749 F.2d at 1326. Because a grant of asylum provides the alien with benefits that are not automatic with a grant of relief under § 243(h), *see, e.g.,* 8 C.F.R. § 209.2 (1984) (after one year, alien may apply for adjustment of status to permanent resident alien), the petitioner may wish to be granted asylum in addition to the § 243(h) relief. Accordingly, we remand Canjura-Flores's asylum claim to the Attorney General so that he may exercise his discretion.

REVERSED IN PART, REVERSED AND REMANDED IN PART.